**UNITED STATES of America**
v.
**William A. SHUMATE, Appellant.**

**UNITED STATES of America**
v.
**Robert L. McMILLAN, Appellant.**
**Nos. 23109, 23110.**

United States Court of Appeals,
District of Columbia Circuit.

Argued April 16, 1970.

Decided June 30, 1970.

Mr. Raymond W. Russell, Washington, D. C. (appointed by this Court) for appellant in No. 23,109.

Mr. Benjamin F. Rossner, Washington, D. C. (appointed by this Court) for appellant in No. 23,110.

Mr. Broughton M. Earnest, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., John A. Terry, and Victor W. Caputy, Asst. U. S. Attys., were on the brief, for appellee.

Before WILBUR K. MILLER, Senior Circuit Judge, and McGOWAN and ROBB, Circuit Judges.

PER CURIAM:

After trial by jury the appellants were convicted and sentenced on all counts of an indictment charging them with first degree burglary of the dwelling of one Haywood Smith (22 D.C.Code § 1801 (a)), robbery of Smith (22 D.C.Code § 2901), and assault with a dangerous weapon on Smith and Bettie L. Powell (22 D.C.Code § 502). The indictment alleged that all of these offenses occurred on May 12, 1968.

We affirm the judgment against McMillan, reverse as to Shumate.

At trial the testimony of Smith and Bettie L. Powell, who was his common law wife, was that they lived in an apart-

ment where they ran a bootlegging establishment. Their testimony was that around 11:00 o'clock on the night of May 11, 1968 the appellants visited the apartment as customers and bought a half pint of whiskey. The appellants returned at about 1:00 o'clock and again at 3:00 o'clock on the early morning of May 12, and bought "another bottle" each time. On each of these three occasions the appellants were admitted by Smith after they knocked on the door. At about 6:00 o'clock on the morning of May 12, however, the appellants, accompanied by a third man, entered the apartment without waiting to be let in. McMillan ordered two half-pints of whiskey and when they were produced he put a knife to Smith's neck and said "give me your money or I'll kill you". He then reached into Smith's pocket, took Smith's semiautomatic pistol and fired two shots close to Smith's head. At the same time Shumate held and twisted Bettie Powell's arm. The three men then departed, taking with them some $80.00 of Smith's money and his pistol. The appellants were arrested later that day and identified by Smith and Bettie Powell as the robbers.

At trial McMillan did not testify; Shumate did. His testimony was that he had never seen Haywood Smith or Bettie Powell before the trial, and had never been at their apartment. He said that he had arrived in Washington on a bus at 2:00 o'clock on the morning of May 12, 1968; that he was on the way from Burlington, North Carolina, to York, Pennsylvania; that between the time of his arrival and about 7:00 o'clock that morning he was asleep at the bus station, waiting to transfer to a bus leaving for York. He said that McMillan was a casual acquaintance whom he had met at the bus station.

We find no error with respect to McMillan. We hold, however, that the cross examination of Shumate was improper and prejudicial, and that this error was compounded by the erroneous admission of evidence offered by the government to rebut Shumate's testimony.

Shumate's testimony on direct examination began as follows:

"Q. Sir, would you state in a loud, clear voice so we can all hear you, your name and employment?

"A. William Arnold Shumate, Private, United States Army, Headquarters, Special Troop, Fort, (sic) Lee, Virginia.

"Q. Now, Mr. Shumate, were you in the United States Army on May 11, 1968, do you recall?

"A. Yes, I was.

"Q. Directing your attention to May 11, 1968, can you please tell me where you were that day?

"A. May 11th?

"Q. May 11, 1968.

"A. In Burlington, North Carolina.

"Q. In Burlington, North Carolina? Is that your home?

"A. No, it's my mother's home.

"Q. What were you doing in Burlington, North Carolina?

"A. Visiting."

After this preface Shumate recounted his story of arriving in Washington at 2:00 o'clock on the morning of May 12, on his way from North Carolina to York. In his direct testimony there was no further reference of any kind to his connection with the Army. On cross examination, however, the prosecutor was permitted to develop that for some time prior to May 12 Shumate had been absent from his military post without leave. The cross examination on this point was detailed and extensive, occupying many pages of the transcript. The court overruled the appellant's objections upon the ground that the matter was "relevant on the defense alibi" and was proper impeachment. On this theory again the government was permitted to prove in rebuttal that Shumate had left his post without leave on April 16, 1968 and had not returned.

The appellant testified on direct examination that he arrived in Washington at 2:00 o'clock in the morning on

May 12, so that he could not have been at Smith's apartment at an earlier hour. The fact that for several weeks he had been absent without leave from his post had nothing whatever to do with the hour of his arrival in Washington on May 12. The irrelevant fact of his military dereliction was injected into the evidence by the prosecutor for the obvious purpose of discrediting the appellant in the eyes of the jury. We think the cross examination was improper and unquestionably prejudicial and that the damage to the appellant was magnified by the erroneous admission of the evidence which the government introduced in rebuttal. Commonwealth v. Spare, 353 Mass. 263, 230 N.E.2d 798 (1967); See United States v. Tomaiolo, 249 F.2d 683, 692 (2d Cir. 1957); Henderson v. United States, 202 F.2d 400, 405 (6th Cir. 1953).

The judgment in No. 23,110 is affirmed.

The judgment in No. 23,109 is reversed.